**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **KENNETH P. MAJKUT,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 1:08-CV-092-C |
| § | ECF |
| § | |
| **MICHAEL J. ASTRUE,** § | |
| **Commissioner of Social Security,** § | |
| § | Assigned to United States |
| Defendant. § | Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

**THIS CASE** is before the court upon Plaintiff's complaint filed August 4, 2008, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on October 27, 2008, and Defendant filed a brief on November 19, 2008. The parties consented to having the United States magistrate judge conduct all further proceedings in this case on September 24, 2008 (Doc. 14), and October 2, 2008 (Doc. 17). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be reversed and that this case should be remanded for further administrative proceedings.

**I.   STATEMENT OF THE CASE**

Plaintiff filed applications for disability insurance benefits and for SSI benefits on October 4, 1995, with a protective filing date of September 7, 1995, for the SSI application, alleging disability beginning March 1, 1987. Tr. 41. Plaintiff's applications were denied initially and upon reconsideration. Tr. 41, 59-63, 68-71. Plaintiff filed a Request for Hearing by Administrative Law Judge on August 2, 2000, and this case came for hearing before the Administrative Law Judge ("ALJ") on November 14, 2001. Tr. 41, 72-73, 451-81. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 456-76. Deborah Buckingham, a vocational expert ("VE"), appeared and testified as well. Tr. 476-81. At the hearing, Plaintiff requested that his alleged onset date be amended to June 30, 1994. Tr. 41. The ALJ issued a decision unfavorable to Plaintiff on December 21, 2001. Tr. 38-50.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements only through the amended onset date of June 30, 1994. Therefore, Plaintiff's disability must be shown to have begun as of or prior to that date. Tr. 42. Plaintiff had not engaged in substantial gainful activity at any time since June 30, 1994. *Id.* Plaintiff has "severe" impairments, including bipolar disorder, most recent episode manic, severe, with psychotic features. *Id.* Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, and the extent to which these symptoms can be reasonably accepted as consistent with the objective

medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 16.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 46.

The ALJ found that Plaintiff could not return to his past relevant work. Tr. 41. He noted that Plaintiff was considered a "younger individual" with a G.E.D. 20 C.F.R. §§ 416.963, 416.964; Tr. 48.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of medium work activity, limited to jobs that do not require a reasoning development level of more than one, two, or three. Tr. 48. Having found that Plaintiff could not perform the full range of medium work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. *Id.* He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of marker/merchandise tagger, with 2,000 jobs in Texas and 23,000 jobs nationally; housekeeper, with 50,000 jobs in Texas and 500,000 jobs nationally; and store laborer, with 14,000 jobs in Texas and 200,000 jobs nationally. Tr. 49. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 49-50.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 21, 2002. Tr. 24-37. The Appeals Council denied Plaintiff's request and issued its opinion on June 19, 2002, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 21-23. The

ALJ's decision, therefore, became the final decision of the Commissioner. On February 18, 2005, however, the Appeals Council issued an order in which it set aside its earlier order to consider new evidence. Tr. 5-8. After considering this new evidence, the Appeals Council again denied Plaintiff's request for review. *Id.*

On April 13, 2005, Plaintiff commenced civil action no. 1:05-CV-068 which sought judicial review of the Commissioner's decision that Plaintiff was not disabled. The magistrate judge issued his report and recommendation on August 4, 2006, recommending that the district judge reverse the Commissioner's decision and remand the case for further proceedings. On October 4, 2006, the Appeals Council remanded this case to the ALJ. Tr. 532.

The ALJ conducted a supplemental hearing on September 5, 2007. Tr. 495, 620-37. Plaintiff, represented by a non-attorney, again testified in his own behalf. Tr. 495, 624-33. Shelly Eike, a vocational expert ("VE"), appeared and testified as well. Tr. 634-36. The amended alleged onset date of June 30, 1994, was confirmed at this hearing. Tr. 495. The ALJ again issued a decision unfavorable to Plaintiff on February 15, 2008. Tr. 491-505.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. Again he found that Plaintiff met the disability insured status requirements only through the amended onset date of June 30, 1994. Therefore, Plaintiff's disability must be shown to have begun as of or prior to that date. Tr. 495. Plaintiff had not engaged in substantial gainful activity at any time since June 30, 1994. *Id.* Plaintiff has "severe" impairments, including hypothyroidism, gastroesophageal reflux disease, peptic ulcer disease, gastritis, low pack pain syndrome, somatization disorder, and bipolar disorder, most recent episode manic, severe, with psychotic features. Tr. 496. The ALJ found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.*

Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ again found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of medium work activity, limited to jobs that are performed with a reasoning development level of one, two, or three; that have no more than incidental contact with the public and with co-workers; and that have convenient access to a bathroom. Tr. 504. Having found that Plaintiff could not perform the full range of medium work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 505. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of janitor, with 35,000 jobs in Texas and 350,000 jobs nationally; laundry worker, with 5,000 jobs in Texas and 53,000 jobs nationally; and store laborer, with 8,000 jobs in Texas and 80,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id*.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309

F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 505.

### III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to follow the requirements of the law, specifically: (1) the judge did not consider the entire record in making the RFC determination and instead "picked and chose" only evidence which supported his conclusion, (2) the judge failed to properly consider the opinions of the treating physicians and counselors regarding Plaintiff's impairments; (3) the judge failed to include all the limitations imposed by Plaintiff's recognized impairments; and (4) the judge failed to consider the combination of Plaintiff's impairments and their effects in determining the RFC; failed to include in the hypothetical question to the VE all impairments which are established in the record; and failed to assess the Plaintiff's ability to maintain employment in light

of his mental impairments. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.    Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

In making his RFC determination, the ALJ incorporated limitations to jobs with a reasoning level of one, two, or three; no more than incidental contact with the public and co-workers, and convenient access to a bathroom. Tr. 504. Plaintiff argues that this RFC determination fails to incorporate all of the limitations imposed by Plaintiff's mental impairments.

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

Plaintiff disagrees with the substance of the RFC finding regarding the limitations imposed by his mental impairments. He argues that his mental impairments imposed significant limitations on his ability to perform work activity and that the ALJ engaged in picking and choosing only the evidence which supported his decision.

In his decision the ALJ noted that Plaintiff's impairments included somatization disorder and bipolar disorder, most recent episode, manic, severe, with psychotic features. Tr. 496. He noted that Plaintiff has a long history of somatization with regard for his physical symptoms and an obsession with his rectum and rectal function. *Id*. The ALJ noted that Plaintiff's history of mental illness was of more significance than his physical complaints. Tr. 497. The ALJ noted that Plaintiff was referred for evaluation of attention-deficit hyperactivity disorder, depression, anxiety, and violent thoughts of harming himself. *Id*. The ALJ noted that Plaintiff was seen for depression at Mental Health - Mental Retardation ("MHMR") in February 1995 and returned in May 2005. *Id*. The ALJ noted Plaintiff's treatment by his family practice provider, Laura Barber, M.D., and his referral to Abilene Mental Health - Mental Retardation ("MHMR") for treatment. *Id*. He noted that upon intake, the MHMR records revealed that Plaintiff was anxious and had occasional delusions, occasional rapid speech, and tangential thinking, and that Plaintiff was taking no medication at that time. *Id.* He noted that in August 1995, an MHMR staff psychiatrist, Dr. O. A. Solano, indicated that Plaintiff was anxious; sometimes stared blankly; was dysphoric with blunted and anxious affect, although cooperative, alert, and coherent; and expressed multiple somatic complaints. *Id.* Dr. Solano's diagnostic impression was depressive disorder NOS; anxiety disorder; and somatization disorder. Tr. 44. Dr. Solano also indicated that several conditions should be ruled out, including obsessive compulsive disorder, psychotic disorder NOS, personality disorder NOS, and dependent personality with schizotypal traits. *Id*. The ALJ noted Dr. Solano's opinion of a Global Assessment

of Functioning ("GAF")[1] score on Axis V[2] of 40.[3] The ALJ also discussed Plaintiff's further treatment at MHMR. *Id*. He noted Plaintiff's November 1998 diagnosis of panic disorder; obsessive compulsive disorder; somatization disorder; and dependent personality disorder, as well as a GAF of 45.[4] Tr. 498. The ALJ noted that Plaintiff was discharged in February 1999 because he no longer fit within the priority population. *Id*.

The ALJ discussed the consultative psychiatric examination by Duane Miller, M.D., in May of 2000. *Id.* He noted Dr. Miller's report of Plaintiff's being very agitated during the examination with rapid speech, hypomanic activity, inability to stay on one subject or topic, with poor insight and judgment. *Id*. He noted Dr. Miller's opinion that it was doubtful that Plaintiff could make good decisions on occupational, personal, and social adjustments; that his presentation would likely cause others to be avoidant; that he was not stable; and that his current medication was not of significant

---

[1] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[2] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[3] A GAF score of 31 to 40 indicates some "impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[4] A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

help. *Id*. He also noted Dr. Miller's diagnosis, including a GAF of 55[5] and a guarded prognosis. *Id*.

The ALJ noted that Plaintiff's condition continued to deteriorate, culminating in admission to the Big Spring State Hospital from May until June 2000 for inpatient mental health treatment. *Id*. Plaintiff's GAF score at intake was 25.[6] *Id*. He noted that upon such treatment, Plaintiff improved dramatically. *Id*. At the time of discharge, he was stable with no signs of psychosis and his GAF score had risen to 65.[7]  Tr. 498-99.

The ALJ opined that Plaintiff's MHMR records from June 2000 indicated that Plaintiff has had fairly good results from his medication, without side effects, alleviating his symptoms and allowing for a fair remission. Tr. 499. He noted that in June 2001, Plaintiff's counselor, Steve Queen, LPC, opined that Plaintiff's bipolar disorder, significant anxiety, and obsessive compulsive symptoms resulted in a fairly poor prognosis, as well as his opinion that Plaintiff's emotional and mental difficulties were debilitating and prevented him from holding down any significant employment. *Id*. He also noted that Mr. Queen's August 2001 mental residual functional capacity assessment indicated that Plaintiff was at a less than sedentary level of functioning, with an

---

[5] The DSM-IV defines a GAF score of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[6] The DSM-IV defines a GAF rating within the range 21-30 as describing someone whose "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends). *Id*. at 32.

[7] The DSM-IV defines a GAF of 61-70 as some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

extremely limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to perform activities within a schedule, to maintain regular attendance, and to be punctual. *Id*. The ALJ noted Mr. Queen's opinion that Plaintiff could not maintain a regular schedule due to anxiety and stress, had difficulty following simple instructions, and had paranoid fears regarding social situations and people, with a poor prognosis. *Id.* He also noted that Mr. Queen indicated in a November 2001 letter that Plaintiff continued to struggle and deteriorated in September and October 2001. *Id*.

The ALJ found that Plaintiff's objectively identifiable, medically determinable impairment could reasonably be expected to produce the symptoms he alleges. Tr. 500. He also found that Plaintiff's allegations regarding his subjective complaints and functional limitations were not reasonably supported by the findings of the objective medical evidence or inferences therefrom and were not entirely credible, to the extent that he alleged the inability to engage in any work activity since June 30, 1994. Tr. 501. In conjunction with his credibility finding, the ALJ noted that Plaintiff "has attended MHMR only sporadically," which he said was "an indication [Plaintiff] does not think his condition is serious." Tr. 503. He also opined that MHMR records and Dr. Miller's psychiatric consultative examination indicated that Plaintiff had adequate concentration, has been stable and in partial remission, and his mental status examinations have been unremarkable. *Id*. The ALJ also found that Mr. Queen's opinions and assessments were not supported by the medical record and, therefore, did not accord them significant or probative weight. *Id*.

The ALJ discussed Plaintiff's testimony regarding his symptoms and the limitations imposed by his impairment. *Id*. He noted Plaintiff's report that he could walk 20 or 30 minutes, that he cared for his own personal hygiene, that he has difficulty with concentrating and the ability to stay on task for 20 minutes, that he gets upset when he drops things, and that he becomes angry and depressed.

-11-

Tr. 501-02. He also noted Plaintiff's report of going to the store once or twice a week, having two friends, feeling comfortable with his wife for only a few hours, sometimes attending church, playing dart baseball with ten people, having rituals at home, and pacing. *Id*. He also noted that Plaintiff stood throughout the hearing and during many of his MHMR sessions. *Id*. The ALJ also noted Plaintiff's report of paranoid and suicidal thoughts. *Id*.

The ALJ ultimately concluded that Plaintiff retained the physical RFC for a limited range of activity at the medium exertional level. Tr. 502. He found that Plaintiff's mental illness required that Plaintiff avoid more complex and detailed job instructions, that he have no more than incidental contact with the public and with co-workers, and that he have convenient access to a restroom. Tr. 504. He thus found that Plaintiff's ability to perform medium level work was limited to jobs with a reasoning level of one, two, or three as defined in the *Dictionary of Occupational Titles*[8] and by the need to have no more than superficial contact with the public and co-workers and convenient access to a restroom. Tr. *Id*. He found that Plaintiff was unable to perform any of his past relevant work. *Id*.

A review of the record shows it to be rife with references by Plaintiff's medical care providers regarding Plaintiff's obsession or preoccupation with his rectum and rectal function specifically and his somatization disorder generally. On May 15, 1995, it was noted that Plaintiff drank a tremendous amount of water and believed he had ruptured his stomach. Tr. 157. Plaintiff reported that his mind gets cloudy and he has violent thoughts about hurting himself with a knife and hurting his wife or dog with a hammer. *Id*; *see also,* Tr. 158 (indicating somatization disorder and a possible thought disorder, with multiple somatic complaints). It was noted that Plaintiff had a tremendous amount of fixation on the rectum and rectal sphincter as well as the inguinal area and

---

[8] United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991)("DOT").

the prostate. Tr. 172. Plaintiff reported painful defecation. Tr. 174. It was noted that Plaintiff chronically and inappropriately used both Proctofoam and a muscle relaxant chronically without evident conditions indicated for these medications. Tr. 183. A treating physician indicated that Plaintiff had a "psychotic fixation with his rectum." Tr. 185. Plaintiff reported that he digs in to remove feces, which his care provider indicated was a "fixation." Tr. 186. A physician indicated that Plaintiff had a considerable amount of trouble, not the least of which was his mind as he was "not all there" and he had an obsession with his rectum, using laxatives constantly. Tr. 189. The record reflects a report that Plaintiff "for years has had a fixation on the rectum" and used an inordinate amount of enemas for constipation, taking Proctofoam and "uses it like nothing." Tr. 192. Plaintiff testified that he had to stand up with every bowel movement, gave himself an enema with each bowel movement, and would physically remove feces from his body while wearing latex gloves. Plaintiff also reported that his preoccupation with his rectal functioning required a minimal of two hours per day to deal with. Tr. 463.

The ALJ indicated that Plaintiff should have convenient access to a restroom in making his RFC determination. The ALJ did not otherwise incorporate any limitations into the RFC finding to specifically deal with Plaintiff's somatization disorder and his obsession or preoccupation with his rectal functioning. While the only evidence regarding the specific amount of time devoted to rectal functioning is Plaintiff's testimony, which the ALJ did not find wholly credible, the record is replete with references by Plaintiff's medical and psychiatric and psychological care providers to Plaintiff's somatization disorder, which was characterized as a psychotic fixation. While evidence indicates that other aspects of Plaintiff's mental impairments may have improved when he was under the care of a psychiatrist and was given medication, the evidence of record does not indicate that Plaintiff's fixation on his rectal functioning improved to the same degree.

As Plaintiff correctly notes, even the state agency medical consultants indicated that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 345.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ's responsibility as factfinder is to weigh the evidence and to incorporate limitations into the RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. However, there must be evidence in the record to support the ALJ's RFC determination, and in making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p.

The ALJ's opinion does not demonstrate that the ALJ indeed considered the entire record. Rather, it appears that the ALJ picked and chose only the evidence that supported his position. *See Loza*, 219 F.3d at 393 (internal citations omitted). The court finds that the RFC determination is not supported by substantial evidence in the record.

Moreover, this error at step 3 of the sequential evaluation process has affected the step 5 finding. At step 5, the ALJ relied upon the testimony of the VE to find that Plaintiff could perform other work which exists in significant numbers in the national economy.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and

skills needed." *Id.*   In testifying, a  vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  However, because the RFC determination did not adequately reflect the limitations imposed by Plaintiff's impairments as shown by the record, the hypothetical question posed to the VE was similarly suspect.

Remand is required to allow the ALJ to determine the limitations imposed by the combination of Plaintiff's impairments, particularly his somatization disorder, and should this matter proceed to step 3 of the sequential evaluation process, for a determination of Plaintiff's residual functional capacity.  Upon remand, further consideration of the evidence in the record regarding the limitations imposed by Plaintiff's impairments is necessary.

The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ.  *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).  Upon remand and after determining Plaintiff's RFC, the ALJ will have the opportunity to present a hypothetical question to the VE which incorporates limitations which are accepted by the ALJ and which reflect the RFC finding.

### IV.   CONCLUSION

Having found that the RFC finding and the ALJ decision is not supported by substantial evidence in the record because of the failure to adequately analyze and evaluate the limitations

imposed by Plaintiff's mental impairments, particularly Plaintiff's somatization disorder, the court does not reach Plaintiff's additional claims of error.

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that the Commissioner's decision should be reversed and that this case should be remanded for further proceedings.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's application for disability insurance benefits and for SSI benefits is **REVERSED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED**. Upon remand, the ALJ should further consider whether Plaintiff retains the RFC to perform work which exists in significant numbers in the national economy.

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 28th day of September, 2009.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**